# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ALBERT GUZMAN, Individually and on Behalf of All Others Similarly Situated, <br><br>       Plaintiff, <br><br> v. <br><br> FORD MOTOR COMPANY, JAMES D. FARLEY, JR., and JOHN T. LAWLER, <br><br>       Defendants. | Case No.: 2:24-cv-12080-LVP-KGA <br><br> <u>CLASS ACTION</u> <br><br> Hon. Linda V. Parker |

## MOVANT RONALD A. FERRANTE'S OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF <u>AND APPROVAL OF SELECTION OF COUNSEL</u>

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT...................................................................1

II.    ARGUMENT ..........................................................................................3

    A.   The PSLRA Process .....................................................................3

    B.   Mr. Ferrante Is the Presumptive Lead Plaintiff Because He Possesses the "Largest Financial Interest" in the Action under Both Alleged Class Periods. ...................................................................5

        1.   Initial Class Period – April 27, 2022 to July 24, 2024. ........................6

        2.   Expanded Class Period – October 28, 2021 to July 24, 2024..............8

        3.   Mr. Ferrante Is the Presumptive Lead Plaintiff. ................................10

    C.   Movant Clark D. Crippen Should Be Disqualified from Serving as Lead Plaintiff Because He Did Not Purchase Any Shares During the Initial Class Period. ...................................................................12

III.   CONCLUSION........................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cable & Wireless PLC Sec. Litig.*,
217 F.R.D. 372 (E.D. Va. Apr. 21, 2003) ........................................................10

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio 2005) .....................................................................5

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
No. 1:17 CV 1677, 2017 U.S. Dist. LEXIS 199868 (N.D. Ohio Dec. 4, 2017) .............................................................................................................6, 9

*In re Critical Path, Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) ...........................................................10

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
903 F.2d 176 (2d Cir. 1990)..............................................................................12

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
No. 5:03 CV 2166, 2004 U.S. Dist. LEXIS 27043 (N.D. Ohio May 12, 2004) .............................................................................................................10

*Gordon v. Sonar Capital Mgmt. LLC*,
92 F. Supp. 3d 193 (S.D.N.Y. 2015).................................................................13

*Gutman v. Sillerman*,
No. 15 Civ. 7192 (CM), 2015 U.S. Dist. LEXIS 179553 (S.D.N.Y. Dec. 8, 2015) .............................................................................................................19

*J. H. Cohn & Co. v. Am. Appraisal Assoc., Inc.*,
628 F.2d 994 (7th Cir. 1980).............................................................................13

*Maliarov v. Eros Int'l PLC*,
15-CV-8956 (AJN); 16-CV-223 (AJN), 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5, 2016) .................................................................................19

*In re Network Assocs., Inc. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ..............................................................10

iii

*Palm Tran, Inc. v. Credit Acceptance Corp.*,
  No. 20-cv-12698, 2021 U.S. Dist. LEXIS 101356 (E.D. Mich. May 28,
  2021) ...................................................................................................7

*Pio v. GM Co.*,
  No. 14-11191, 2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) ..6, 7,
  9, 11

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
  256 F.R.D. 620 (E.D. Wis. 2009)......................................................14

*Police & Fire Ret. Sys. v. SafeNet, Inc.*,
  No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21,
  2007) .................................................................................................10

*Ragan v. Appharvest, Inc.*,
  No. 21-cv-7985 (LJL), 2021 U.S. Dist. LEXIS 238168 (S.D.N.Y. Dec. 13,
  2021) ..........................................................................................14, 19

*Ruckel v. Ford Motor Co.*,
  No. 17-cv-13536, 2018 U.S. Dist. LEXIS 19656 (E.D. Mich. Feb. 7, 2018) ....11

*Samaras v. Fiat Chrysler Autos., N.V.*,
  No. 16-12803, 2017 U.S. Dist. LEXIS 219030 (E.D. Mich. Jan. 18, 2017)........7

*Shupe v. Rocket Cos.*,
  601 F. Supp. 3d 214 (E.D. Mich. 2022)....................................passim

*Topping v. Deloitte Touche Tohmatsu CPA*,
  95 F. Supp. 3d 607 (S.D.N.Y. 2015)................................................19

*Villare v. Abiomed, Inc.*,
  No. 19-cv-07319 (ER), 2020 U.S. Dist. LEXIS 114684 (S.D.N.Y. June 29,
  2020) .................................................................................................14

*Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds
  v. Brixmor Prop. Grp., Inc.*,
  No. 16-CV-02400 (AT)(SN), 2016 U.S. Dist. LEXIS 164682 (S.D.N.Y.
  Nov. 29, 2016)...................................................................................10

*Winer Family Trust v. Queen*,
  503 F.3d 319 (3d Cir. 2007)..............................................................12

iv

**Statutes**

15 U.S.C. §78u-4 ................................................................................1, 3, 4, 12

**Other Authorities**

Manual for Complex Litigation § 31.31 ...............................................................5

S. Rep. No. 104-98 (1995), reprinted in 1995 U.S.C.C.A.N. 679 ............................4

## I.      PRELIMINARY STATEMENT

Movant Ronald A. Ferrante respectfully submits this memorandum of law in opposition to the competing motions for lead plaintiff and appointment of lead counsel.[1] Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), courts are required to appoint a "lead plaintiff" and "lead counsel" at the outset of every class action securities fraud lawsuit under the Securities Exchange Act of 1934. 15 U.S.C. §78u-4(a)(3). The "lead plaintiff" is by statute the movant with the "largest financial interest" in the action that also satisfies the typicality and adequacy requirements of Rule 23 under the Federal Rules of Civil Procedure. That movant is Mr. Ferrante.

Courts within this District and throughout the country evaluate "financial interest" by using the "Olsten-Lax" factors. These factors generally consider the number of shares purchased by the movants, the amount of money spent on the shares, the number of shares held through the end of the class period, and the approximate recoverable losses under the securities laws. Mr. Ferrante's "financial interest" under these factors is larger than any of the other movants. Mr. Ferrante also meets Rule 23's typicality and adequacy requirements. He is an experienced

---

[1] Mr. Ferrante does not oppose any pending requests to consolidate the *Guzman* action with *Sklodowski v. Ford Motor Company, et al.*, No. 2:24-cv-12492-TGB-EAS (filed Sept. 23, 2024), notwithstanding his objection to the class period alleged therein as discussed in detail below.

investor who owns and operates a graphics and pinstriping business at various auto dealerships. He has hired attorneys in the past for miscellaneous matters including real estate transactions and a claim against a former financial advisor. Mr. Ferrante also retained Levi & Korsinsky, LLP and Shea Law, PLLC as his attorneys, which underscores his adequacy to serve as the lead plaintiff given the law firms' respective reputations and expertise in the field of securities litigation. On this basis, Mr. Ferrante's motion should be granted in its entirety.

Only one issue stands to complicate the matter. Just two weeks prior to the statutory 60-day deadline to file lead plaintiff motions, the law firm who initially commenced this case (the *Guzman* action) filed a second case (the *Sklodowski* action). The *Guzman* and *Sklodowski* actions are identical in all but one respect—the class period in *Guzman* begins on April 27, 2022 while the class period in *Sklodowski* starts on October 28, 2021. The *Sklodowski* action does not provide any explanation for the change in class period. Nor is any explanation evident. The case focuses on Ford's "Ford Blue" segment and how its earnings were negatively impacted by an increase in warranty expenses. The "Ford Blue" segment, however, did not exist prior to March 2022. Consequently, any statements made prior to that date are disconnected from the theory of liability that presently exists.

These facts create a significant problem for one of the competing movants, Clark D. Crippen. Mr. Crippen is the only competing movant who comes remotely

2

close to having a "larger financial interest" in the action than Mr. Ferrante. However, Mr. Crippen's financial interest stems completely and exclusively from shares purchased during the expanded class period in the *Sklodowski* action (*i.e.*, prior to the class period in the *Guzman* action). Thus, unless the class period in the *Sklodowski* action is accepted, Mr. Crippen cannot pursue any claims against Ford. Mr. Crippen's self-interest in pursuing the *Sklodowksi* class period renders him incapable of adequately representing the class as a whole.

Fortunately, the Court does not need to waste time or resources investigating why the *Sklodowski* action was filed or what it was intended to achieve because Mr. Ferrante, under either alleged class period, has the "largest financial interest" in the outcome of the litigation when properly weighing the "Olsten-Lax" factors. Given his financial interest along with his ability to properly represent the interests of the class at large, it should be Mr. Ferrante that is selected to serve as the lead plaintiff in this lawsuit.

## II. ARGUMENT

### A. The PSLRA Process

The PSLRA sets forth the procedure for the selection of a Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice announcing the class action, class members

3

interested in serving as Lead Plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. §78u-4(a)(3)(A)(i). This straightforward leadership selection provides that the "person or group of persons" with the largest loss is the presumptive lead plaintiff and must be appointed lead so long as it is otherwise adequate and typical within the meaning of Rule 23. 15 U.S.C. §78u-4(a)(3)(B)(i) and (iii)(I)(bb)-(cc). Congress created the lead plaintiff presumption because it believed that the movant with the largest loss would be most incentivized to actively prosecute the securities class action and monitor counsel. *See* S. Rep. No. 104-98, at 4 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 683 (Congress sought "to empower investors so that they – not their lawyers – exercise primary control over private securities litigation.").

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

4

**B. Mr. Ferrante Is the Presumptive Lead Plaintiff Because He Possesses the "Largest Financial Interest" in the Action under Both Alleged Class Periods.**

The PSLRA does not provide a specific methodology for determining which class member has "the largest financial interest" in the litigation. However, when evaluating "financial interests," courts in this District consider the following four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the net funds expended during the class period; and (4) the approximate losses suffered. *Shupe v. Rocket Cos.*, 601 F. Supp. 3d 214, 218 (E.D. Mich. 2022). These factors are referred to as the "Olsten-Lax factors" or "Olsten-Lax test." "The four-factor inquiry has been widely accepted in the case law and various treatises because it provides courts with additional information." *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 303 (S.D. Ohio 2005) (citing Manual for Complex Litigation § 31.31 (finding the four factors helpful "because they look to relatively objective indicators . . . rather than to the ultimate question of damages")).

When applying the Olsten-Lax test, courts consider each factor to determine the movant with the "largest financial interest." *See Shupe*, 601 F. Supp. 3d. at 219-20 (considering all factors when evaluating financial interest); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1:17 CV 1677, 2017 U.S.

5

Dist. LEXIS 199868, at *7 (N.D. Ohio Dec. 4, 2017) ("this Court will weigh all four factors to select the lead plaintiff in this case. All four factors will be given equal weight"); *Pio v. GM Co.*, No. 14-11191, 2014 U.S. Dist. LEXIS 151205, at *11 (E.D. Mich. Oct. 24, 2014) (Parker, J.) ("the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses"). Applying the test correctly here, there should be no question that Mr. Ferrante has the "largest financial interest" regardless of whether the class period starts in April 2022 (the initial class period) or October 2021 (the expanded class period).

1.    *Initial Class Period – April 27, 2022 to July 24, 2024.*

Plaintiff Albert Guzman and his counsel, Glancy Prongay & Murray, commenced this action on August 8, 2024. ECF No. 1. The complaint asserts claims on behalf of all "persons and entities that purchased or otherwise acquired Ford securities between April 27, 2022 and July 24, 2024, inclusive." *Id*. at ¶1 (PageID.2). The complaint also ties damages to Ford's second quarter earnings announcement on July 24, 2024, which caused Ford's stock price to decline by approximately 20%. *Id*. at ¶37. The announcement revealed, in pertinent part, that "Ford Blue" was less profitable than previously estimated due to an "increase in warranty reserves" and that, consequently, Ford was lowering its full-year outlook for "Ford Blue." *Id*.

6

Using the *Guzman* class period, Mr. Ferrante unquestionably possesses the "largest financial interest" relative to the other movants, as illustrated below:

| Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended | Approx. Losses |
|---|---|---|---|---|
| Ronald A. Ferrante | 342,210 | 302,242 | $3,841,470 | $621,230 |
| Teamsters Local 710 Pension Fund | 88,000 | 88,000 | $1,197,519 | $259,905 |
| Michael M. Press | 103,600 | 81,800 | $978,729 | $107,174 |
| Clark D. Crippen | 0 | 0 | $0 | $0 |

*See Guzman* Class Period Analysis, Exhibit F to Supplemental Index of Exhibits, filed herewith (hereinafter the "Supp. Index") (providing loss calculations under initial class period, including ECF No. 14-3 (PageID.204-06) for completeness).

Relative to every other movant, Mr. Ferrante purchased more shares, held more shares through the class period, expended more funds, and consequently sustained a greater recoverable loss. Under the Olsten-Lax test, Mr. Ferrante possesses the "largest financial interest" in the outcome of the action. *See Palm Tran, Inc. v. Credit Acceptance Corp.*, No. 20-cv-12698, 2021 U.S. Dist. LEXIS 101356, at *5-6 (E.D. Mich. May 28, 2021); *Samaras v. Fiat Chrysler Autos., N.V.*, No. 16-12803, 2017 U.S. Dist. LEXIS 219030, at *7-8 (E.D. Mich. Jan. 18, 2017); *Pio*, 2014 U.S. Dist. LEXIS 151205, at *10-11.

2.  *Expanded Class Period – October 28, 2021 to July 24, 2024.*

Plaintiff Robert Sklodowski is represented by the same counsel as Mr. Guzman, Glancy Prongay & Murray. They filed an additional complaint on September 23, 2024, just two weeks shy of the 60-day deadline for filing lead plaintiff motions, with allegations nearly identical to the *Guzman* action. *See* Complaint, Case No. 2:24-cv-12492-TGB-EAS, Dkt. No. 1 (PageID.2). The *Sklodowski* complaint differs from the *Guzman* complaint in one material respect. It alleges a class period beginning on October 28, 2021 (instead of April 27, 2022). *Id*. at ¶1. Everything else about the complaint is the same, including the corrective disclosure on July 24, 2024 concerning the "Ford Blue" division and its revised full-year outlook. *Id*. at ¶40.

Using the *Sklodowski* class period, Mr. Ferrante still possesses the "largest financial interest" relative to the other movants, as illustrated below:

| Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended | Approx. Losses |
|---|---|---|---|---|
| Ronald A. Ferrante | 377,210 | 322,242 | $4,161,056 | $870,492 |
| Teamsters Local 710 Pension Fund | 109,100 | 109,100 | $1,512,610 | $350,182 |
| Michael M. Press | 103,600 | 81,800 | $978,729 | $107,174 |
| Clark D. Crippen | 67,546 | 67,546 | $1,624,024 | $904,340 |

*See Sklodowski* Class Period Analysis, Exhibit G to Supp. Index (providing loss calculations under expanded class period); *see also* Supplemental Declaration of Ronald A. Ferrante, Exhibit H to Supp. Index (providing additional transactions for *Sklodowski* class period).

Even under the expanded class period, Mr. Ferrante remains the movant with the "largest financial interest" in the outcome of the action. He purchased more shares, held more shares through the class period, and expended more funds than any other movant. And while Mr. Ferrante may have lost approximately $35,000 less than movant Clark D. Crippen under this class period (or <5% of his overall losses), that discrepancy is not enough to outweigh the other Olsten-Lax factors. *See Shupe*, 601 F. Supp. 3d at 219 (refusing to rely solely on "losses suffered"); *Pio*, 2014 U.S. Dist. LEXIS 151205, at *11 ("The Court declines the invitation to ignore all but the fourth Lax factor in deciding which movant has the largest financial interest in this litigation."). As this Court held in *Pio*, "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses." *Id*. (appointing movant who held greater financial interest under first three Oslen-Lax factors where competing movant potentially lost $100,000 more). *See also TransDigm*, 2017 U.S. Dist. LEXIS 199868, at *9 (appointing

9

movant who possessed greater financial interest based on first three Olsten-Lax factors despite having lost $35,000 less than competing movant).[2]

### 3. *Mr. Ferrante Is the Presumptive Lead Plaintiff.*

Having the "largest financial interest" in the action, Mr. Ferrante is entitled to the presumption of lead plaintiff. Mr. Ferrante is entitled to this presumption because he meets the typicality and adequacy requirements under Rule 23. *See Shupe*, 601 F. Supp. 3d at 220-21 ("At this stage of the litigation, however, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate [of the class]." (internal quotations omitted)). Indeed, Mr. Ferrante alleges that he purchased

---

[2] *See also Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, No. 16-CV-02400 (AT)(SN), 2016 U.S. Dist. LEXIS 164682, at *5 (S.D.N.Y. Nov. 29, 2016) (appointing lead plaintiff that the first three factors "overwhelmingly" favored over movant that incurred larger losses under the fourth factor); *Police & Fire Ret. Sys. v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959, at *5-6 (S.D.N.Y. Feb. 21, 2007) (appointing movant favored by the first three factors after noting that a two-percent difference between competing movants' alleged fourth-factor losses was too slight to be outcome determinative); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03 CV 2166, 2004 U.S. Dist. LEXIS 27043, at *18-19 (N.D. Ohio May 12, 2004) (finding that, although one movant had alleged the largest loss, application of the first three factors revealed that loss to be "illusory"); *In re Cable & Wireless PLC Sec. Litig.*, 217 F.R.D. 372, 375 n.4 (E.D. Va. Apr. 21, 2003) (considering net shares purchased in assessing financial interest and appointing movant with largest net funds expended); *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (finding net shares purchased "determinative" of financial interest); *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999) (concluding net shares purchased should be used to determine financial interest as "the candidate with the most net shares purchased will normally have the largest potential damage recovery").

Ford stock in reliance on Defendants' alleged misrepresentations and was damaged as a result, just like all other members of the class. *See* Dkt. No. 14 at 7-9 (PageID.188-190). *See also Shupe*, 601 F. Supp. 3d at 220 (holding movant "typical" because "claims arise out of the same course of events and relies on the same legal theories as do the claims of other Class members").

Mr. Ferrante also satisfies Rule 23's adequacy requirements. "The . . . 'adequacy' requirement is satisfied whe[n] the representative 'ha[s] common interests with those of unnamed class representatives' and is 'capable of vigorously prosecuting the action with the assistance of qualified counsel.'" *Shupe*, 601 F. Supp. 3d at 220 (quoting *Pio*, 2014 U.S. Dist. LEXIS 151205, at *10). Mr. Ferrante's "adequacy" is supported by his financial interest, which translates into a strong "incentive to monitor the litigation, control lead counsel, and police any proposed settlement." *Shupe*, 601 F. Supp. 3d at 221 (quoting *Ruckel v. Ford Motor Co.*, No. 17-cv-13536, 2018 U.S. Dist. LEXIS 19656, at *7 (E.D. Mich. Feb. 7, 2018)).

In addition, "[Mr. Ferrante] has also retained counsel that is highly experienced in prosecuting securities class actions vigorously and efficiently, and timely submitted his choice to this Court for approval in accordance with the PSLRA. Thus, [Mr. Ferrante] has demonstrated the sophistication, resources, and experience necessary to pursue the case to a successful conclusion through the effective oversight of counsel. Finally, there is no proof that [Mr. Ferrante] is subject

11

to unique defenses that render him incapable of representing the class. Accordingly, [Mr. Ferrante] satisfies the adequacy requirement." Shupe, 601 F. Supp. 3d at 221 (internal citations and quotations omitted).

> **C.** **Movant Clark D. Crippen Should Be Disqualified from Serving as Lead Plaintiff Because He Did Not Purchase Any Shares During the Initial Class Period.**

Aside from possessing a smaller "financial interest" in the action, Mr. Crippen is conflicted from representing the class at large. This is because Mr. Crippen did not purchase any shares during the *Guzman* class period and therefore will not be eligible for any recovery whatsoever absent the *Sklodowski* class period. Thus, instead of focusing on meritorious claims asserted under the *Guzman* class period, Mr. Crippen will prioritize his self-interest in defending the *Sklodowski* class period (even if it proves detrimental to the class at large). This makes him vulnerable to "unique defenses" and otherwise renders him "incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). *See also Winer Family Trust v. Queen*, 503 F.3d 319, 323-25 (3d Cir. 2007) (plaintiff lost standing to pursue claims after court dismissed claims based on misrepresentations occurring in first part of class period); *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[r]egardless of whether the issue is framed in terms of the typicality of the representative's claims or the adequacy of its

12

representation, there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *J. H. Cohn & Co. v. Am. Appraisal Assoc., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980) ("[E]ven an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation."); *Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 201-02 (S.D.N.Y. 2015) (finding lead plaintiff atypical where he was "subject to the unique defense that he suffered no economic loss," as his "gains and avoided losses during the various class periods exceeded any losses he may have suffered during those periods").

Mr. Crippen's transaction history evidences his inability to adequately represent the class. The following table is taken from the certification Mr. Crippen submitted in support of his opening motion papers:

**SCHEDULE A**

**SECURITIES TRANSACTIONS**

Stock

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 01/13/2022 | 300 | $24.14 |
| 01/13/2022 | 15,805 | $24.29 |
| 01/13/2022 | 20,000 | $24.29 |
| 01/13/2022 | 20,000 | $24.25 |
| 01/13/2022 | 600 | $24.14 |
| 01/13/2022 | 4,144 | $24.14 |
| 01/13/2022 | 4,195 | $24.28 |
| 01/26/2022 | 2,002 | $19.23 |
| 04/26/2022 | 500 | $14.41 |

13

ECF No. 15-3 (PageID.327). As indicated above, Mr. Crippen purchased 100% of his Ford shares during the expanded *Sklodowski* class period, meaning he did not purchase any shares at all during *Guzman* class period. In fact, Mr. Crippen purchased approximately 65,000 shares (nearly 97% of his overall holdings) entirely on January 13, 2022. ECF No. 15-4 (PageID.329), thereby making it essential for Mr. Crippen and his counsel to do whatever it takes to show that Defendants' fraud predated that date (again, even if detrimental to the class as a whole).

Courts routinely scrutinize attempts by movants to rely on altered class periods where, as here, it appears to have a tactical purpose. *See Ragan v. Appharvest, Inc.*, No. 21-cv-7985 (LJL), 2021 U.S. Dist. LEXIS 238168, at *19 n.4 (S.D.N.Y. Dec. 13, 2021) (rejecting expanded class period where complaint was filed "day before the lead plaintiff motions were due" and appeared to be product of "gamesmanship"); *Villare v. Abiomed, Inc.*, No. 19-cv-07319 (ER), 2020 U.S. Dist. LEXIS 114684, at *11-13 (S.D.N.Y. June 29, 2020) ("numerous courts have cautioned that blindly accepting the longest class period without any inquiry may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest."); *c.f. Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (warning that "simply adopting the most inclusive class period might encourage unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff

14

determination"). Considering the *Sklodowski* action's timing and allegations, it most definitely appears to have been filed for illegitimate reasons and should be disregarded for the purposes of deciding the pending lead plaintiff motions.

With regard to the timing of the *Sklodowski* action, it was filed a mere two weeks before the expiration of the 60-day deadline for filing lead plaintiff motions. At that, it was filed by the same law firm who filed the *Guzman* action and with no apparent reason for pulling the start of the class period back from April 2022 to October 2021. No new facts emerged warranting an expansion of the class period; indeed, presumably such facts would have been included in the additional complaint. Moreover, the firm responsible for filing both complaints (Glancy, Prongay & Murray) issued press releases containing the same descriptions of the allegations after filing the *Sklodowski* action. The following excerpts are taken from press releases issued by the firm on August 8, 2024 (when it first filed the *Guzman* action) and October 4, 2024 (a week and a half after filing the *Sklodowski* action and just three days before the expiration of the 60-day deadline for lead plaintiff motions):

> The complaint filed in this class action alleges that throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company had deficiencies in its quality assurance of vehicle models since 2022; (2) that, as a result, the Company was experiencing higher warranty costs; (3) that the Company's warranty reserves did not accurately reflect the quality issues in vehicles sold since 2022; (4) that, as a result, the Company's profitability was reasonably likely to suffer; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations and prospects were materially misleading and/or lacked a reasonable basis at all relevant times.

ECF No. 14-4 (PageID.208) (Aug. 8, 2024 press release).

15

> The complaint filed in this class action alleges that throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company had deficiencies in its quality assurance of vehicle models since 2022; (2) that, as a result, the Company was experiencing higher warranty costs; (3) that the Company's warranty reserves did not accurately reflect the quality issues in vehicles sold since 2022; (4) that, as a result, the Company's profitability was reasonably likely to suffer; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

See Press Release, Exhibit I to Supp. Index (Oct. 4, 2024 press release).

By the same token, Mr. Crippen's counsel issued a similar press release after the filing of the *Sklodowski* action providing the same description. An excerpt of the press release is below:

> The *Ford* class action lawsuit alleges that defendants throughout the Class Period made false and/or misleading statements and/or failed to disclose that: (i) Ford had deficiencies in its quality assurance of vehicle models since 2022; (ii) as a result, Ford was experiencing higher warranty costs; (iii) Ford's warranty reserves did not accurately reflect the quality issues in vehicles sold since 2022; and (iv) as such, Ford's profitability was reasonably likely to suffer.

See Press Release, Exhibit J to Supp. Index (Oct. 3, 2024 press release). These press releases consistently described the alleged fraud as having started in 2022. If the earlier allegations in the *Sklodowski* action had any genuine import, they would have

16

been publicized to investors after the case was filed. They were not, however, and a closer review of the allegations in the actions explains why.

This action is, and has always been, focused on Ford's "Ford Blue" segment and the revelation that its earnings were negatively impacted by an increase in warranty expenses. Specifically, on July 24, 2024, Ford announced its earnings for the second quarter of 2024. The *Guzman* and *Sklodowski* complaints contain the same allegations, as follows:

> 37.    Specifically, the 2Q24 Press Release stated the following, in relevant part:
>
> > Company net income was $1.8 billion and adjusted earnings before interest and taxes, or EBIT, was $2.8 billion. *Profitability was affected by an increase in warranty reserves,* though efforts to lift the quality of new products are starting to pay off, with positive implications for customer satisfaction and Ford's operating performance.
> >
> > *        *        *
> >
> > "*We still have lots of work ahead of us to raise quality and reduce costs* and complexity, but the team is committed and we're heading in the right direction," said Lawler.
> >
> > *        *        *
> >
> > Capital expenditures for the year are still anticipated to be between $8.0 billion and $9.0 billion, with an enterprise-wide objective for the lower end of the range.
> >
> > Outlooks for full-year EBIT are up for Ford Pro, to $9.0 billion to $10.0 billion, on further growth and favorable product mix, and down for Ford Blue, to $6.0 billion to $6.5 billion, reflecting higher warranty costs than originally planned.
>
> 38.    On this news, the Company's share price fell $2.51, or 18.36%, to close at $11.16 per share on July 25, 2024, on unusually heavy trading volume.

*Compare Guzman* Complaint, ECF No. 1, ¶¶37-38 (PageID.15) *with Sklodowski* Complaint, ECF No. 1, ¶¶40-41 (PageID.16-17). Ford's announcement about

"higher warranty costs" and lower "[o]utlooks for full-year EBIT" for "Ford Blue" pushed the stock into a downward spiral causing it to decline by more than 18% in the span of just one day. *Guzman* Complaint, ECF No. 1, ¶38 (PageID.15).

These facts make the *Sklodowski* action implausible on its face, namely because "Ford Blue" did not exist in October 2021 when the *Sklodowski* class period begins. In fact, Ford did not create the "Ford Blue" segment until March 2022, which explains why the *Guzman* class period begins on April 27, 2022. On March 2, 2022, Ford announced its plan to separate internal combustion engine operations from electric vehicle operations with the former being called "Ford Blue" and the latter being called "Model e". The purpose of the reorganization was to allow investors to better value the separate business relative to peer companies and increase long-term profitability. *See* Press Release, Exhibit K to Supp. Index (press release announcing creation of "Ford Blue" division).

The *Sklodowski* action ignores this fact and, consequently, undermines potentially viable theories of falsity, scienter, and loss causation. If "Ford Blue" did not exist prior to March 2, 2022 (at the earliest), then the corrective disclosure concerning "Ford Blue" on July 24, 2024 cannot have "corrected" anything prior to that date, *i.e.*, the earlier misrepresentations in the *Sklodowski* complaint. *See Sklodowski* Complaint, ECF No. 1, ¶17 (PageID.6-7). Thus, the statements relied

18

upon by Mr. Crippen to assert his "financial interest" in this action are disconnected from the corrective disclosure pleaded in both pending actions.

Where, as here, a class period is changed materially on the eve of the PSLRA's 60-day lead plaintiff deadline, courts evaluate its legitimacy by scrutinizing the basis for the change. *See Ragan v. Appharvest, Inc.*, No. 21-cv-7985 (LJL), 2021 U.S. Dist. LEXIS 238168, at \*21 (S.D.N.Y. Dec. 13, 2021); *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082, at \*10-12 (S.D.N.Y. Apr. 5, 2016) (citing *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 620 (S.D.N.Y. 2015)); *see also Gutman v. Sillerman*, No. 15 Civ. 7192 (CM), 2015 U.S. Dist. LEXIS 179553, \*9-10 (S.D.N.Y. Dec. 8, 2015) (holding movant engaged in "gamesmanship" by filing complaint after 60-day deadline). The *Sklodowski* action's basis for changing the class period does not hold water and, therefore, Mr. Crippen cannot rely on it. That would leave Mr. Ferrante as the presumptive lead plaintiff and clear the way for him to pursue the class claims in the best interests of the class as a whole.

## III.    CONCLUSION

For the foregoing reasons, Mr. Ferrante respectfully requests that the Court grant his Motion and enter an Order: (1) appointing Mr. Ferrante as Lead Plaintiff, (2) approving his selection of Levi & Korsinsky as Lead Counsel and Shea Law as Liaison Counsel for the Class, and (3) granting such other relief as the Court may

deem just and proper.

Dated: October 21, 2024                 Respectfully Submitted,

                                        **SHEA LAW, PLLC**

                                        */s/ David J. Shea*
                                        David J. Shea (P41399)
                                        Ashley D. Shea (P82471)
                                        26100 American Drive, 2nd Floor
                                        Southfield, MI 48034
                                        (248) 354-0224
                                        david.shea@shealaw.com
                                        ashley.shea@shealaw.com

                                        *Liaison Counsel for Movant and*
                                        *[Proposed] Liaison Counsel for the*
                                        *Class*

                                        **LEVI & KORSINSKY, LLP**
                                        Adam M. Apton
                                        (*pro hac vice* forthcoming)
                                        33 Whitehall Street, 17th Floor
                                        New York, NY 10004
                                        Tel: (212) 363-7500
                                        Fax: (212) 363-7171
                                        Email: aapton@zlk.com

                                        *Lead Counsel for Movant and*
                                        *[Proposed] Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2024, I authorized the electronic filing of the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

*/s/ David J. Shea*
David J. Shea