**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| ALBERT GUZMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> FORD MOTOR COMPANY, JAMES D. FARLEY, JR., and JOHN T. LAWLER, <br><br> Defendants. | No. 2:24-cv-12080-LVP-KGA <br><br> District Judge Linda V. Parker <br><br> Magistrate Judge Kimberly G. Altman |

**REFILED MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
MOTION OF TEAMSTERS LOCAL 710 PENSION FUND FOR
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
<u>SELECTION OF LEAD COUNSEL</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

STATEMENT OF ISSUES PRESENTED PURSUANT TO LR 7.1(d)(2) ............v

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE
    RELIEF SOUGHT PURSUANT TO LR 7.1(d)(2) ..................................... vi

PRELIMINARY STATEMENT ..........................................................................1

ARGUMENT .......................................................................................................2

I.     RONALD FERRANTE FAILED TO MAKE THE REQUISITE
     ADEQUACY SHOWING IN HIS LEAD PLAINTIFF MOTION ...............4

     A.    Ronald Ferrante Cannot Satisfy the PSLRA Adequacy Requirement
        Because His Lead Plaintiff Motion Is Riddled With Serious Errors ....4

     B.    Ronald Ferrante Is an Unknown Individual Who Failed to Make the
        Requisite Adequacy Showing ............................................................8

II.    TEAMSTERS 710 SHOULD BE APPOINTED LEAD PLAINTIFF .........10

     A.    Teamsters 710 Has a Superior Financial Interest..............................10

     B.    As the Only Institutional Investor Seeking Appointment as Lead
        Plaintiff, Teamsters 710 Is the Paradigmatic Lead Plaintiff and
        Should be Appointed ..........................................................................14

CONCLUSION ..................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bowman v. Legato Sys., Inc.*,
195 F.R.D. 655 (N.D. Cal. 2000)........................................................................17

*In re BP, PLC Sec. Litig.*,
758 F. Supp. 2d 428 (S.D. Tex. 2010)..................................................................5

*Burns v. UP Fintech Holding Ltd*,
2024 WL 387261 (C.D. Cal. Jan. 30, 2024) ........................................................7

*Camp v. Qualcomm Inc.*,
2019 WL 277360 (S.D. Cal. Jan. 22, 2019) .........................................................8

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ................................................................................2

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
2020 WL 2614703 (S.D.N.Y. May 22, 2020) ...................................................8, 9

*City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*,
2011 WL 13228127 (W.D. Mich. Jan. 3, 2011) .................................................15

*In re Critical Path, Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001)..............................................................12

*Deering v. Galena Biopharma, Inc.*,
2014 WL 4954398 (D. Or. Oct. 3, 2014).....................................................5, 6, 7

*Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*,
2021 WL 913934 (D. Utah Mar. 10, 2021) ..........................................................5

*Jastram v. Nextera Energy, Inc.*,
2023 WL 11885983 (S.D. Fla. Oct. 26, 2023) ...................................................11

*Khan v. ChargePoint Holdings, Inc.*,
2024 WL 2261948 (N.D. Cal. May 16, 2024)................................................12, 13

*Lax v. First Merchs. Acceptance Corp.*,
  1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ......................................................10

*Markette v. XOMA Corp.*,
  2016 WL 2902286 (N.D. Cal. May 13, 2016)...................................................12

*In re Network Assocs., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999)....................................................11, 12, 13

*Palm Tran, Inc. - Amalgamated Transit Union Loc. 1577 Pension
  Plan v. Emergent Biosolutions Inc.*,
  2021 WL 6072812 (D. Md. Dec. 23, 2021) .......................................................4

*Perez v. HEXO Corp.*,
  2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) .......................................................9

*Perlmutter v. Intuitive Surgical, Inc.*,
  2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ...............................................11, 12

*In re Pfizer Inc. Sec. Litig.*,
  233 F.R.D. 334 (S.D.N.Y. 2005) ................................................................14, 15

*Pio v. Gen. Motors Co.*,
  2014 WL 5421230 (E.D. Mich. Oct. 24, 2014)..............................................3, 11

*Plaut v. Goldman Sachs Grp., Inc.*,
  2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ....................................................6

*Porter v. Graftech Int'l Ltd.*,
  2024 WL 2189642 (N.D. Ohio May 15, 2024) ............................................16, 17

*Randall v. Fifth St. Fin. Corp.*,
  2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) .......................................................16

*Rauch v. Vale S.A.*,
  378 F. Supp. 3d 198 (E.D.N.Y. 2019) ................................................................4

*Rihn v. Acadia Pharms. Inc.*,
  2015 WL 5227923 (S.D. Cal. Sept. 8, 2015)....................................................12

*Rodriguez v. DraftKings Inc.*,
  2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)..................................................6, 7

iii

*Schaffer v. Horizon Pharma Plc*,
  2016 WL 3566238 (S.D.N.Y. June 27, 2016) ......................................................3

*Shapiro v. TG Therapeutics, Inc.*,
  2022 WL 16555585 (S.D.N.Y. Oct. 31, 2022)............................................*passim*

*Shupe v. Rocket Cos., Inc.*,
  601 F. Supp. 3d 214 (E.D. Mich. 2022) ............................................................11

*In re WatchGuard Sec. Litig.*,
  2005 WL 8188936 (W.D. Wash. July 13, 2005) ...................................12, 13, 14

*Westchester Putnam Ctys. Heavy & Highway Laborers Loc. 60*
  *Benefit Funds v. Brixmor Prop. Grp. Inc.*,
  2016 WL 11648466 (S.D.N.Y. Nov. 29, 2016)...................................................11

**Rules & Statutes**

Fed. R. Civ. P. 23 ................................................................................................1, 3

15 U.S.C. 78u-4 *et seq*. .................................................................................*passim*

**Docketed Cases**

*City of Birmingham Firemen's and Policemen's Supplemental*
  *Pension Sys. v. Credit Suisse Grp. AG*,
  No. 17-cv-10014 (S.D.N.Y.)..............................................................................17

*Dang v. Amarin Corp. PLC*,
  No. 21-cv-19212-MAS-TJB (D.N.J.) ................................................................15

*Porter v. GrafTech Int'l Ltd.*,
  No. 24-cv-00154-DCN (N.D. Ohio)...................................................................15

*Strougo v. Tivity Health, Inc.*,
  No. 20-cv-00165 (M.D. Tenn.)...........................................................................15

## STATEMENT OF ISSUES PRESENTED PURSUANT TO LR 7.1(d)(2) [1]

1.      Whether Teamsters Local 710 Pension Fund possesses the largest financial interest in the relief sought by the Class.

Teamsters Local 710 Pension Fund's Answer: Yes.

2.      Whether Teamsters Local 710 Pension Fund has made the required preliminary showing it is a typical and adequate Class representative.

Teamsters Local 710 Pension Fund's Answer: Yes.

3.      Whether any opposing movant can offer the required proof to rebut the presumption that Teamsters Local 710 Pension Fund is the most adequate plaintiff.

Teamsters Local 710 Pension Fund's Answer: No.

4.      Whether the Court should approve Teamsters Local 710 Pension Fund's selection of Lead Counsel and Liaison Counsel.

Teamsters Local 710 Pension Fund's Answer: Yes.

---

[1] This brief has been refiled in compliance with the Court's consolidation order. ECF Nos. 31-32. It is substantively the same as the previously filed opposition (ECF No. 20) but excludes references to consolidation.

## CONTROLLING OR MOST APPROPRIATE
## AUTHORITY FOR THE RELIEF SOUGHT PURSUANT TO LR 7.1(d)(2)

1.   15 U.S.C. § 78u-4(a)(3).

2.   *Pio v. Gen. Motors Co.*, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014).

3.   *Ruckel v. Ford Motor Co.*, 2018 WL 783534 (E.D. Mich. Feb. 7, 2018).

4.   H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730.

Proposed Lead Plaintiff Teamsters 710[2] respectfully submits this Memorandum of Law in further support of its motion for appointment as Lead Plaintiff and approval of its selection of Labaton as Lead Counsel for the Class and AsherKelly as Liaison Counsel for the Class.

## PRELIMINARY STATEMENT

Teamsters 710 is entitled to be appointed as Lead Plaintiff under the PSLRA because it is *the only* movant asserting the largest financial interest in this litigation that *also* satisfies the PSLRA's adequacy and typicality requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (requiring the appointment of the movant that "has the largest financial interest" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure"). With its purchases of 109,100 Ford shares during the Class Period and a record of successfully representing investors as a lead plaintiff in securities class action lawsuits, there can be no doubt that Teamsters 710 has a substantial financial interest in this litigation and is adequate and typical in all respects.

While competing Lead Plaintiff movants Ronald Ferrante and Clark Crippen claim to have sustained larger losses than Teamsters 710 (see ECF No. 15-4 at

---

[2] All definitions and abbreviations used herein remain unchanged from Teamsters 710's previous submission before the Court. See ECF No 13 at PageID.96-173. Unless otherwise noted, all ECF references are to the docket in *Guzman v. Ford Motor Company*, No. 24-cv-12080 (E.D. Mich.). Unless otherwise noted, emphasis has been added and citations have been omitted throughout.

PageID.329; ECF No. 14-3 at PageID.204), neither can be appointed Lead Plaintiff. *First*, Ferrante completely fails to satisfy the PSLRA's adequacy requirement because his certification is riddled with mistakes, including ***covering the wrong Class Period***. On top of these critical issues, Ferrante is an unknown individual who has provided no evidence of his ability to adequately represent the Class.

*Second*, Teamsters 710 has a larger financial interest than Crippen based on the number of Ford shares it purchased during the Class Period and its net purchases of those shares. Even if the Court believes it is unclear which movant has the largest financial interest, Crippen, like Ferrante, is an unknown individual that has not demonstrated that he satisfies the PSLRA's adequacy requirement. Teamsters 710, in contrast, is the type of sophisticated institution Congress sought, through the PSLRA, to put in control of securities class actions lawsuits. Therefore, Teamsters 710 should be appointed over Crippen.

## ARGUMENT

The goal of the PSLRA's lead plaintiff provision "is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001). In selecting the lead plaintiff, courts first determine which movant has the greatest financial interest. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Courts have discretion to consider several factors in determining

2

which movant has the greatest interest.  *Pio v. Gen. Motors Co.*, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014).  District courts also have broad discretion to reject lead plaintiff applicants upon a showing they are inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The dispositive issue is whether there exists a "non-speculative risk that the movant [with the greatest financial loss] will not be adequate." *Schaffer v. Horizon Pharma Plc,*, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (listing cases).

Here, Teamsters 710 is the ***only*** movant that satisfies the financial interest, adequacy, and typicality requirements of the PSLRA and should be appointed as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  As described below, both Ferrante and Crippen's initial motions demonstrate they are unknown individuals who lack the sophistication to serve the Class as Lead Plaintiff.  Further, Teamsters 710's financial interest exceeds that of Crippen when analyzed under several metrics commonly employed by courts in this District and across the country.  Therefore, Teamsters 710 is the movant with the largest financial interest that satisfies the Rule 23 requirements.

## I.  RONALD FERRANTE FAILED TO MAKE THE REQUISITE ADEQUACY SHOWING IN HIS LEAD PLAINTIFF MOTION

### A.  Ronald Ferrante Cannot Satisfy the PSLRA Adequacy Requirement Because His Lead Plaintiff Motion Is Riddled With Serious Errors

Ferrante's inadequacy is demonstrated by the errors in his initial motion, including using the wrong Class Period and claiming to be filing a complaint instead of a lead plaintiff motion.

On the first issue, Ferrante cannot be appointed because his certification and motion do not cover the full relevant Class Period.  Courts overwhelmingly "adopt the longest and most inclusive of the possible class periods for the purposes of assessing financial interest and appointing a lead plaintiff."  *Palm Tran, Inc. - Amalgamated Transit Union Loc. 1577 Pension Plan v. Emergent Biosolutions Inc.*, 2021 WL 6072812, at *4 (D. Md. Dec. 23, 2021); *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 208 n.11 (E.D.N.Y. 2019) ("For the purposes of appointing lead plaintiff in cases involving two potential class periods, courts use the longer class period in the analysis.").

The Class Period in the second-filed of the actions (the "Second Action") begins on October 28, 2021 to coincide with misleading financial metrics issued by Ford (*Sklodowski v. Ford Motor Company*, No. 24-cv-12492-TGB-EAS (E.D. Mich.), ECF No. 1 at PageID.6-7), and alleges that Defendants concealed that Ford was experiencing elevated warranty costs, concealed that Ford had deficiencies in

4

its quality assurance of vehicle models, and overstated the Company's profitability. *See Id.* at PageID.15-16. These are precisely the type of non-frivolous, plausible allegations that can serve as the basis for a Class Period, and therefore the Class Period in the Second Action controls for Lead Plaintiff appointment purposes. *See In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010) ("[T]he Court will use the longest noticed class period unless the factual allegations supporting that period are 'obviously frivolous.'"); *Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at *11 (D. Or. Oct. 3, 2014) (declining to apply shorter class period where that period "commences . . . after [the defendants] had already released several allegedly fraudulent statements"); *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, 2021 WL 913934, at *3 (D. Utah Mar. 10, 2021) ("[C]ourts have reasoned that the plausibility standard for evaluating a motion to dismiss should be used to determine whether to reject a proposed class period.").

As such, all Lead Plaintiff movants were required to submit certifications "[setting] forth all of the transactions of the [movant] in the security that is the subject of the complaint," during Second Action's Class Period. 15 U.S.C. 78u-4(a)(2)(A)(iv). Ferrante has failed to satisfy this bedrock requirement of the PSLRA because his certification only covers April 27, 2022 to July 24, 2024. ECF No. 14-2 at PageID.200. This excludes the five months between October 2021 and April 2022. Ferrante completely ignored the proper Class Period despite the fact that

5

notice of the Second Action was published "in a widely circulated national business-oriented publication or wire service," as required by the PSLRA. 15 U.S.C. 78u-4(a)(3)(A)(i); ECF No. 13-5 at PageID.136.   This notice was published on September 23, 2023, a full *two weeks* before Ferrante submitted his Lead Plaintiff motion, thus giving him and his counsel ample time to prepare an adequate certification and motion.

The result of Ferrante's failure to file a proper certification is that the Court and competing movants have no idea if Ferrante transacted in Ford securities during the longer, correct Class Period.  Thus, they have no way to analyze his loss in the proper Class Period.  Courts frequently reject Lead Plaintiff movants which exclude relevant transactions from their certification.  *Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (rejecting a lead plaintiff movant which excluded transactions from its certification).  This is because an incomplete certification makes it "impossible to tell precisely how much [a movant] has lost." *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *5 (S.D.N.Y. Nov. 12, 2021) (finding a lead plaintiff movant inadequate due to omissions in his certification).

This exclusion may have been intentional, a way for Ferrante to hide transactions in the longer Class Period that decrease his loss.  If this is the case, then Ferrante must be rejected as Lead Plaintiff because his interests are antagonistic to the interests of the Class.  In a similar instance, the court in *Galena Biopharma, Inc*.,

6

rejected a lead plaintiff movant which argued for a shorter class period to serve its own interest. 2014 WL 4954398, at *11. If, on the other hand, Ferrante used the wrong Class Period by mistake, this error was gross negligence on the part of Ferrante and his counsel. Courts have frequently rejected lead plaintiff movants for such errors. *DraftKings Inc.*, 2021 WL 5282006, at *6 ("The slovenliness of [movant's] submissions is undoubtedly relevant and concerning, and plays an important role in the Court's assessment of his adequacy as a putative class representative."). Either way, Ferrante's motion has failed to satisfy the PSLRA's basic certification requirement and neither the Court nor competing movants can accurately analyze his financial interest in this litigation. Therefore, his motion must be rejected.

Utilizing the wrong Class Period was not the only major error in Ferrante's certification. Under the PSLRA, Lead Plaintiff movants are required to "provide a sworn certification." 15 U.S.C. 78u-4(a)(2)(A). Courts have frequently found that false statements made in these certifications under penalty of perjury render lead plaintiff movants inadequate. *See Burns v. UP Fintech Holding Ltd*, 2024 WL 387261, at *5 (C.D. Cal. Jan. 30, 2024). Ferrante's certification claimed, under the penalty of perjury, that he was authorizing the filing a complaint, not a lead plaintiff motion. ECF No. 14-2 at PageID.199 ("I have reviewed the complaint and authorized its filing."). This is precisely the type of serious error that has led courts

7

to reject lead plaintiff movants.  In *Camp v. Qualcomm Inc.*, the court rejected a movant who submitted a certification claiming that he had reviewed a complaint and authorized its filing, but "there was no complaint filed in his name."  2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019); s*ee also Shapiro v. TG Therapeutics, Inc.*, 2022 WL 16555585, at *5 (S.D.N.Y. Oct. 31, 2022) (rejecting a lead plaintiff movant who submitted a false affidavit).  These severe errors render Ferrante inadequate to serve as Lead Plaintiff.

> **B.     Ronald Ferrante Is an Unknown Individual Who Failed to Make the Requisite Adequacy Showing**

Even putting aside critical issues in Ferrante's certification and motion, Ferrante cannot be appointed Lead Plaintiff because he has completely failed to satisfy the PSLRA's requirement that he is capable of "adequately protect[ing] the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Evidence of a lead plaintiff movant's lack of adequacy includes "the 'available resources and experience of the proposed lead plaintiff . . . .'"  *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 2020 WL 2614703, at *2 (S.D.N.Y. May 22, 2020).  Examining such evidence "promotes consistency with the PSLRA's aim of ensuring a lead plaintiff can 'act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation [i]s delivered at a reasonable price.'"  *Id.* (citation omitted).  A lead plaintiff movant fails to meet the adequacy requirement if he lacks "meaningful litigation

8

experience." *Id*. at *3.  Further, a lead plaintiff movant having "career experience that appears to have no bearing on the management of securities litigation," will "undermine [the movant's] claim that he can 'meaningfully oversee and control the prosecution of this consolidated class action.'" *Id*. (citation omitted).

Here, Ferrante has failed to show that he meets the PSLRA's adequacy requirement.  Ferrante claims he runs a "a graphics and pinstriping business," has been "investing in securities for approximately 21 years," and has hired attorneys for real estate matters and "a claim against a former financial advisor." ECF No. 14-5 at PageID.211-12.  None of this experience makes Ferrante an adequate Lead Plaintiff.  Similar lead plaintiff movants have been summarily rejected.  For example, in *Perez v. HEXO Corp*., Judge Buchwald declined to appoint as lead plaintiff the movant with the largest financial interest because the court was skeptical that the movant "an individual investor about whom little is known – possesse[d] the requisite sophistication to serve as lead plaintiff . . . ."  2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020).  The lead plaintiff movant in *Perez*, like Ferrante, had provided information as to his professional career and noted that he had decades of investing experience.  *Id*.  The court found this proffer insufficient to demonstrate his adequacy.  *Id*.  Similarly, in *TG Therapeutics, Inc.*, the court rejected an individual with "over forty years of investment experience," and "experience in

9

managing attorneys in real estate and other matters," but had "no prior experience managing securities class actions." 2022 WL 16555585, at *5.

Therefore, Ferrante should be rejected as Lead Plaintiff because he is an unknown individual who has not shown he has the sophistication or the resources to oversee this litigation.

## II. TEAMSTERS 710 SHOULD BE APPOINTED LEAD PLAINTIFF

### A. Teamsters 710 Has a Superior Financial Interest

With Ferrante wholly inadequate to serve as Lead Plaintiff, Teamsters 710 should be appointed Lead Plaintiff because its financial interest is greater than Crippen's.[3] Pursuant to the four factors set forth in *Lax v. First Merchs. Acceptance Corp.*, financial interest may be determined by: (1) the number of shares purchased during the Class Period; (2) the number of net shares purchased during the Class Period; (3) the total net funds expended during the Class Period; and (4) the approximate losses suffered.  1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997). Here, Teamsters 710 indisputably has a larger financial interest than Crippen based on the first two factors.  Teamsters 710 both purchased and retained 109,100 Ford shares (ECF No. 13-3 at PageID.130) compared to Crippen's 67,546.  ECF No. 15-

---

[3] Teamsters 710's financial interest also far exceeds that of movant Michael Press, *see* ECF No. 13-3 at PageID. 131 & ECF No. 17-5 at PageID. 380, who has filed a notice indicating that he does not have the largest financial interest in the litigation. ECF No. 18 at PageID.469.

4 at PageID 329.  Crippen acknowledged the importance of the shares purchased figure in his own motion for Lead Plaintiff appointment, citing shares purchased in his financial interest analysis.  *See* ECF No. 15 at PageID.313.  Courts have found that "the first three factors provide the most objective measurement of a movant's stake in the litigation."  *Gen. Motors Co.*, 2014 WL 5421230, at *4; *Westchester Putnam Ctys. Heavy & Highway Laborers Loc. 60 Benefit Funds v. Brixmor Prop. Grp. Inc.*, 2016 WL 11648466, at *2 (S.D.N.Y. Nov. 29, 2016) (same).

Further, courts in this district and across the country have recognized the propriety of determining the largest financial interest based primarily on the second factor, net shares.  *Gen. Motors Co.*, 2014 WL 5421230, at *4 ("some courts have found the second factor-retained shares-to be the most determinative factor in approximating an investor's potential recovery"); *Shupe v. Rocket Cos., Inc.*, 601 F. Supp. 3d 214, 219 (E.D. Mich. 2022) (same); *Jastram v. Nextera Energy, Inc.*, 2023 WL 11885983, at *4 (S.D. Fla. Oct. 26, 2023) (determining that the movant with the highest number of net shares had the greatest financial interest in the litigation despite having a smaller approximate loss).  This is because "the candidate with the most net shares purchased will normally have the largest potential damage recovery."  *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999); *see also Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *6 (N.D. Cal. Feb. 15, 2011) ("Courts that equate largest financial interest with

11

potential recovery generally place the greatest weight on the number of net shares purchased during the class period.").

Net shares is the most accurate measure of movants' financial interest where, as here, there was a constant fraud premium throughout the class period. *See In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d at 1027. The fraud premium is the "amount by which the share price increases as a result of the fraud." *In re WatchGuard Sec. Litig.*, 2005 WL 8188936, at *2 (W.D. Wash. July 13, 2005). Courts typically find that where there was only a single disclosure of defendants' fraud there was likely a "relatively constant fraud premium through the class period." *Markette v. XOMA Corp.*, 2016 WL 2902286, at *5-6 (N.D. Cal. May 13, 2016) ("When a single disclosure reveals a purported fraud, there is a constant fraud premium across the class period.").

Therefore, when defendants' fraud is revealed in a single disclosure, the number of net shares purchased by each movant is the best measure of their financial interest. *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) (finding that where there is a constant fraud premium "the number of net shares purchased during the class period is determinative"); *Rihn v. Acadia Pharms. Inc.*, 2015 WL 5227923, at *4 (S.D. Cal. Sept. 8, 2015) (using net shares to determine financial interest where there was a constant fraud premium throughout the class); *c.f. Khan v. ChargePoint Holdings, Inc.*, 2024 WL 2261948, at *3 (N.D.

12

Cal. May 16, 2024) (analyzing financial interest using loss because there was more than one fraud disclosure).

In fact, courts have held that in cases with a constant fraud premium, "the net number of shares purchased during the class period is a *perfect* indicator of who has the most to gain in the litigation." *In re WatchGuard Sec. Litig.*, 2005 WL 8188936, at *3 (emphasis in original).  This is because where the fraud premium is constant "all shares would have been inflated to the same extent." *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d at 1027.  Therefore, "every net share purchased during the class period gives rise to an identical fraud-induced loss equal to the fraud premium.  Whoever purchased the most net shares suffered the most fraud-induced loss, and therefore has the most to gain in the litigation." *In re WatchGuard Sec. Litig.*, 2005 WL 8188936, at *3.

Here, as indicated in both Teamsters 710's motion and the motion submitted by Crippen, Defendants' fraud was disclosed in a single announcement.  *See* ECF No. 13 at PageId.110 & ECF No. 15 at PageId.310-11.  Because there was only one disclosure, there was likely a constant fraud premium throughout the Class Period.  Therefore, net shares is the most appropriate factor to sue when determining which movant has the largest financial interest.  Thus, Teamsters 710's financial interest exceeds that of Crippen because it purchased more net shares.

13

Crippen may argue that his financial interest is larger than Teamsters 710's under certain calculations of *Lax* factors other than net shares, such as loss. Any such argument should be rejected. In cases such as this one, with a constant fraud premium, net shares controls financial interest analysis. There is simply no need for courts to turn to complicated loss analyses where net shares provides the most accurate, most objective estimation of the movants' recoverable damages. Courts need only turn to factors such as the movants' losses where the fraud premium varies throughout the Class Period. *See In re WatchGuard Sec. Litig.*, 2005 WL 8188936, at *4. That is not the case here. The Court can most accurately estimate the movants financial interest through the straightforward net shares analysis and, therefore, Teamsters 710 has the largest financial interest.

**B.      As the Only Institutional Investor Seeking Appointment as Lead Plaintiff, Teamsters 710 Is the Paradigmatic Lead Plaintiff and Should be Appointed**

Even if the court were to determine that Teamsters 710 and Crippen have comparable financial interest, Teamsters 710 should still be appointed as the only institution seeking appointment while Crippen is an unknown individual. Understanding the value of institutional investor leadership, many courts have recognized that the PSLRA reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions. *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (noting the PSLRA "was intended to

14

ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation"); *City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 2011 WL 13228127, at *1 (W.D. Mich. Jan. 3, 2011) (citing the "clear congressional preference for institutional investors to serve as lead plaintiffs").[4]

Capital markets experts agree that class members benefit when institutional investors such as Teamsters 710 serve as lead plaintiff, resulting in substantially larger settlements, and lower agency costs. *See* Ellen M. Ryan & Laura E. Simmons, 2012 CORNERSTONE REP. ON SEC. CLASS ACTION SETTLEMENTS 14 (Cornerstone Research 2013) ("In our analysis of institutional investors, we continued to find that the presence of public pensions as lead plaintiffs is associated with significantly higher settlement amounts."); Michael A. Perino, Markets and Monitors: The Impact of Competition and Experience on Attorneys' Fees in Securities Class Actions, 15 ST. JOHN'S UNIV. SCH. OF LAW L. STUD. RES.,

---

[4] No one understands this preference for institutional lead plaintiffs more than Crippen's counsel, which frequently argues that institutions should be appointed rather than individuals claiming a larger financial interest. *See, e.g.*, *Porter v. GrafTech Int'l Ltd.*, No. 24-cv-00154-DCN (N.D. Ohio), ECF No. 29 at PageID.710 (arguing that an institution should over an individual claiming a larger loss because "an institutional investor . . . is the type of lead plaintiff that Congress expressed its preference for in passing the PSLRA"); *Strougo v. Tivity Health, Inc.*, No. 20-cv-00165 (M.D. Tenn.) (arguing that a pension should be appointed over an individual); *Dang v. Amarin Corp. PLC*, No. 21-cv-19212-MAS-TJB (D.N.J.), ECF No. 22 (arguing that a pension fund should be appointed over a group of individuals alleging a larger loss).

15

Working Paper No. 06-0034, 2006 ("Because public pension funds appear ex ante to be the most capable and best positioned institutional lead plaintiffs on average all other things being equal, the participation of a public pension fund as lead plaintiff should be correlated with lower fee requests by class counsel and lower fee awards"); James D. Cox, Randall S. Thomas & Lynn Bai, There Are Plaintiffs and . . . There Are Plaintiffs: An Empirical Analysis of Securities Class Action Settlements, 61 VAND. L. REV. 355, 378 (2008) ("We find that the presence of an institutional lead plaintiff increases settlement size overall.").

Courts frequently appoint institutional investors over individuals, even where they have comparable financial interests.  For example, in *Randall v. Fifth St. Fin. Corp.*, the court decided between competing lead plaintiffs where "each allege[d] losses that are approximately equal and . . . each movant has much the same economic incentive to monitor and control the litigation and economic interest in the possible recovery."  2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016).  Two of the competing movants were individuals while one was an institutional pension fund. The court decided to appoint the institution over the individual movants due to "the Congressional preference for institutional lead plaintiffs in private securities class actions."  *Id.; see also Porter v. Graftech Int'l Ltd*., 2024 WL 2189642, at *13 (N.D. Ohio May 15, 2024) (accounting for Congress's "expressed preference" for

16

institutional lead plaintiffs in deciding to appoint an institution over an investor which initially claimed a larger loss).

In this case, Teamsters 710's motion is the paradigm envisioned by the PSLRA: one "strong lead plaintiff" with one counsel to "actively manage the litigation on behalf of the class." *Bowman v. Legato Sys., Inc*., 195 F.R.D. 655, 658 (N.D. Cal. 2000).    Further, Teamsters 710 is familiar with the PSLRA's requirements given its long-standing involvement as a lead plaintiff in other similar class actions.   *See, e.g. City of Birmingham Firemen's and Policemen's Supplemental Pension Sys. v. Credit Suisse Grp. AG*, No. 17-cv-10014 (S.D.N.Y.) (resulting in a favorable $15.5 million settlement for investors).

Here, like Ferrante, Crippen is essentially an unknown individual with no relevant experience.  See Section I.B.  Crippen provides in his initial motion that he is a veteran, that he worked at the U.S. Bureau of Customs, that he worked at a county electoral board, and that he has several decades of investing experience.  ECF No. 15-5 at PageID.331.  None of these details show that Crippen is adequate to serve as Lead Plaintiff.  It does not even show that Crippen has experience supervising counsel in any sophisticated litigation.  Because Crippen has not shown that he is an adequate Lead Plaintiff, Teamsters 710 should be appointed in recognition of the PSLRA's preference for institutional investors.  *See TG Therapeutics, Inc*., 2022 WL 16555585, at *6 (appointing a pension fund over an

17

individual because the pension fund was "an institutional investor with significant resources, expertise, and experience . . . . precisely the sort of plaintiff that Congress intended to empower when it enacted the PSLRA," while the individual had "no experience in managing securities class actions").

## CONCLUSION

For the foregoing reasons, Teamsters 710 respectfully requests that the Court grant its motion and enter an Order: (1) appointing Teamsters 710 as Lead Plaintiff; (2) approving its selection of Labaton as Lead Counsel for the Class and AsherKelly as Liaison Counsel for the Class; and (3) granting such other and further relief as the Court may deem just and proper.

Dated: November 27, 2024          Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

*/s/ Francis P. McConville*
Francis P. McConville (N.Y. 4740338)
Eric Belfi (N.Y. 2714202)
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
fmcconville@labaton.com
ebelfi@labaton.com

*Counsel for Proposed Lead Plaintiff and Proposed Lead Counsel for the Class*

18

Matthew Henzi (P 57334)
Cynthia Billings-Dunn (P 54803)
**ASHERKELLY**
25800 Northwestern Highway, Suite 1100
Southfield, Michigan 48075
Tel: (248) 746-2710
mhenzi@asherkellylaw.com
cbdunn@asherkellylaw.com

*Proposed Liaison Counsel for the Class*

19

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2024, I authorized the electronic filing of the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

*s/ Francis P. McConville*
Francis P. McConville