VANOVERBEKE, MICHAUD & TIMMONY, P.C.
THOMAS C. MICHAUD (P46787)
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
tmichaud@vmtlaw.com

Local Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALBERT GUZMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> FORD MOTOR COMPANY, et al., <br><br> Defendants. | Civ. No. 2:24-cv-12080-LVP-KGA (Consolidated) <br><br> <u>CLASS ACTION</u> |

REPLY IN FURTHER SUPPORT OF CLARK D. CRIPPEN'S LEAD
PLAINTIFF MOTION

4856-6695-9091.v2

Among the remaining movants, it is undisputed that Mr. Crippen suffered the greatest LIFO (last in, first out) loss in the Class Period.  Implicitly acknowledging that Mr. Crippen possesses the largest financial interest in the Class Period, Mr. Ferrante and Teamsters 710 attempt to redirect the Court's attention to the *Lax* factors, so that each of them can lay claim to possessing the largest financial interest.  *See* ECF 19 at PageID.477; 20 at PageID.556 (citing *Lax v. First Merchs. Acceptance Corp.*, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)).[1]  What Mr. Ferrante and Teamsters 710 fail to explain, however, is why in ***this*** case, the non-loss *Lax* factors are relevant to the financial interest in the relief sought by the class (they are not). The key issues for the Court are whether to: (1) reject Mr. Ferrante and Teamsters 710's midstream modification of their financial interest methodology; (2) follow the majority of Sixth Circuit decisions that use LIFO loss as the proxy for financial interest and ignore the other *Lax* factors because the parties agree on the LIFO calculations; (3) dismiss Mr. Ferrante's attempt to depress the class's damages by arguing for a shorter class period; and (4) reject Teamsters 710's claim that its status as an institutional investor overrides the PSLRA's explicit language.

## I.      Mr. Crippen Is the Presumptive Lead Plaintiff

Neither Mr. Ferrante nor Teamsters 710 dispute that Mr. Crippen suffered the largest LIFO loss of any movant during the Class Period.  Nor did they originally

---

[1]    Unless otherwise noted, all emphasis is added and citations are omitted.

- 1 -

dispute that a lead plaintiff "should be appointed lead plaintiff based on the substantial ***financial losses*** he suffered." ECF 14 at PageID.183. Teamsters 710 likewise maintained that it "incurred losses of $350,400 on its Class Period transactions in Ford securities as calculated on a [LIFO] basis" and "[a]ccordingly, Teamsters 710 has a substantial financial interest." ECF 13 at PageID.107.

After realizing that Mr. Crippen suffered a larger LIFO loss, however, Mr. Ferrante modified his advocacy on the financial interest inquiry, focusing on the so-called *Lax* factors, and the class period length. In fact, ***Mr. Ferrante did not mention Lax in his motion.*** *See* ECF 14. Courts in this Circuit "express[] disproval for vacillating advocacy such as this, especially as it pertains to calculating losses for appointment as lead plaintiff." *La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, 2020 WL 3396660, at *6 (S.D. Ohio June 19, 2020) (citing *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, 2010 WL 1790763, at *4 (M.D. Tenn. Apr. 30, 2010) (rejecting competing movant's contention that metrics other than loss should be outcome determinative)); *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (same).[2]

---

[2]  *See also St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2019 WL 494129, at *3 n.9 & *4-*5 (M.D. Tenn. Jan. 9, 2019) (recognizing that group's failure to contend certain factors were "the most important in their original motion . . . undermines the [group's] later argument that [only certain] factors must control the Court's analysis"; describing the four-factor assessment as "less useful" where "'[b]oth movants calculate their losses under the "last in, first out" (LIFO) method,' and neither movant has criticized the other's application of that method" and

- 2 -

In attempting to elevate the non-loss *Lax* factors over LIFO losses, Mr. Ferrante and Teamsters 710 fail to explain why any factor other than LIFO loss is now more relevant to the Court's assessment of financial interest in this case. *See* ECF 19 at PageID.477; 20 at PageID.556. This is particularly problematic for Teamsters 710, who now relies on the "net shares purchased" metric (presumably because this is the only metric it prevails under), which has no bearing on the "relief sought by the class." *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). As Teamsters 710 recognized in its motion, the relief sought by the class here is "recovering ***losses*** attributable to Defendants' alleged violations of the federal securities laws" (ECF 13 at PageID.108).[3] The competing movants' other authorities demonstrate that even if the non-loss factors embedded in *Lax* ***may*** be relevant in certain circumstances, they are not relevant here. *See City of Hollywood Firefighters' Pension Fund v. TransDigm*

---

ultimately finding "no reason to depart from its prior practice of looking to the fourth *Olsten-Lax* factor as the most important").

3   *See also Owens v. FirstEnergy Corp.*, 2020 WL 6873421, at *9 (S.D. Ohio Nov. 23, 2020) (Chief Judge Marbley providing detailed analysis finding the non-loss *Lax* factors "less useful because the LIFO method incorporates them into its calculation methodology"); *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("[s]o long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status"); *Horowitz v. Sunedison, Inc.*, 2016 WL 1161600, at *4 n.5 (E.D. Mo. Mar. 24, 2016) ("Although the Zecher Family Group argues that it has the largest financial interest when measured under the other *Lax* factors, it does not dispute that MERS has the greatest approximate loss, which is the primary *Lax* factor in determining which potential lead plaintiff has the largest financial interest . . . ."); *Sapir v. Averback*, 2015 WL 858283, at *2 (D.N.J. Feb. 26, 2015) (same); *Pace v. Quintanilla*, 2014 WL 4180766, at *2-*3 (C.D. Cal. Aug. 19, 2014) (same); *Darwin v. Taylor*, 2012 WL 5250400, at *2-*3 (D. Colo. Oct. 23, 2012) (same).

4856-6695-9091.v2

*Grp., Inc.*, 2017 WL 6028213, at *2-*3 (N.D. Ohio Dec. 5, 2017) (finding other factors relevant where one movant "sold out its position of [stock] during the class period" which negated that movant's larger loss); *Owens* 2020 WL 6873421, at *9 (distinguishing case law relied upon by Teamsters 710; declining to "treat the parties' net shares purchased as the most instructive *Olsen-Lax* factor"). And in *Pio v. Gen. Motors Co.*, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014), unlike here, the movants "employ[ed] different methodologies from each other to calculate their losses" and "each use[d] different methods from brief to brief – offering the Court varying estimations of their losses," forcing the Court to "spen[d] considerable time" making sense of the movants' calculations in an attempt to conduct an apples-to-apples comparison. *Id.* at *5-*6 (lamenting that "[s]uch efforts seem contrary to one of the main reasons courts favor the use of the four *Lax* factors: 'because they look to relatively objective indicators'").[4] Because none of the circumstances in those cases exist here, "[i]t is not self-evident . . . what weight these factors should be given in

---

[4]   Importantly, here, Mr. Ferrante and Teamsters 710 agree that the LIFO calculations are accurate. In *Pio*, by contrast, the movants disagreed on basic mathematical principles, and this Court was forced to expend substantial resources considering a wide array of methodologies and criteria to ascertain which movant possessed the largest financial interest. As a court recently recognized in distinguishing *Pio*, "the net-shares-purchased analysis in *Pio* served as a proxy for estimating total loss. . . . ***A proxy is not necessary where, as here, the parties agree on how loss is calculated under the fourth factor.***" *Acadia Healthcare*, 2019 WL 494129, at *4-*5 ("The Court thus finds no reason to depart from its prior practice of looking to the fourth *Olsten-Lax* factor as the most important.").

- 4 -

relation to the amount of loss, or even why [the Court] should consider them at all." *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at \*4 (N.D. Ill. Mar. 15, 2005); *Elstein v. Net1 UEPS Techs., Inc.*, 2014 WL 3687277, at \*6 (S.D.N.Y. July 23, 2014) (holding net shares purchased "'does not seem terribly relevant [to] greatest financial interest").[5]

## II.    Mr. Ferrante's Bid to Shrink the Class Period Should Be Denied

With no other plausible avenue to appointment, Mr. Ferrante is left to try to persuade the Court that the Class Period pled in the *Sklodowski* complaint is "disconnected from the theory of liability that presently exists."   ECF 19 at PageID.478.  But this endeavor falls short, as Mr. Ferrante's own opening briefing (and both complaints) confirm, the case is premised on the Company's overall concealment of higher warranty costs – not just the Ford Blue division.  Defendants' own statements that the higher warranty costs disclosed on July 24, 2024 were due to issues with Ford's *2021* model year vehicles – issues that "could have been detected at launch" –is directly connected to the *Guzman* theory of liability and provides a clear rationale for the Class Period start date in 2021.  *See* Exhibit 1; *see also* Exhibits 2-3.

---

[5]    *See also Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 2011 WL 6202585, at \*7 (M.D. Tenn. Nov. 28, 2011) (denying movant's attempt to jettison loss in favor of net shares purchased as "'muddy[ing] the waters'" and concluding that movant with "the largest financial loss . . . has the largest financial interest"); *Garden City*, 2010 WL 1790763, at \*3-\*4 (noting that court did "not ascertain any practical need for an alternate method for determining the largest financial interest" where one movant claimed the largest "loss").

- 5 -

In addition to the factual alignment and plausibility of the *Sklodowski* allegations, the case law is overwhelmingly clear that, at this early stage of the case, "'the class' . . . should be defined as the broadest, most inclusive potential class." *Plumbers & Pipefitters Loc. 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (noting that this assumption "makes some sense, because at the outset of a case the court should view the facts in the light most favorable to the plaintiffs and should narrow the allegations only after the parties have had the opportunity to develop the record").  Consequently, the Court should be skeptical of Mr. Ferrante's short-sighted arguments which would shrink the class's (and his own) damages by limiting the Class Period.[6]

### III.    Teamsters 710's Status as an Institutional Investor Does Not Trump the Financial Interest Inquiry

Teamsters 710's argument that its status as the lone institutional investor is enough to supersede the nearly three-fold larger losses (and net funds expended) of Mr. Crippen is contradicted by "a straightforward application of the [PSLRA] statutory scheme . . . [which] provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case. . . .  If financial

---

[6]    *See Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) ("At this stage of the litigation, a shorter class period would have the effect of reducing the class size and limiting the potential amount of damages.  It is unclear why a potential lead plaintiff would argue for a shorter class period, unless it was in the best interest of that particular plaintiff."); *Oakland Cnty. Voluntary Emps. Beneficiary Ass'n v. Generac Holdings Inc.*, 2023 WL 9511520, at *3 (E.D. Wis. May 30, 2023) (same).

4856-6695-9091.v2

sophistication had been Congress's principal concern, it would not have made the plaintiff who *lost* the most money the presumptive lead plaintiff." *Cavanaugh*, 306 F.3d at 732, 737 n.20 (emphasis in original)[7]  Likewise, "experience supervising counsel in [] sophisticated litigation" is not a prerequisite for presumptive lead plaintiff status. ECF 20 at PageID.563.[8]

There is no dispute that Mr. Crippen suffered the greatest LIFO loss in the Class Period.  Mr. Crippen easily meets Rule 23's requirements.  As such Mr. Crippen's lead plaintiff motion should be granted.

DATED:  November 27, 2024          VANOVERBEKE, MICHAUD
                                    & TIMMONY, P.C.
                                   THOMAS C. MICHAUD (P46787)


                                          s/ Thomas C. Michaud
                                   THOMAS C. MICHAUD

---

[7]  *See also In re Telxon Corp. Sec. Litig.,* 67 F. Supp. 2d 803, 821-22 (N.D. Ohio 1999) ("The institutional investor is not presumptively the most adequate plaintiff *solely by virtue of its status as an institutional investor*. . . .  If that were the case, Congress would have simply provided that *institutional investors* are presumptively the most adequate plaintiffs, regardless of the size of financial loss. . . .") (emphasis added and in original); *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 2019 WL 2611013, at *5 (E.D. Tenn. June 26, 2019) (same).

[8]  *See Cavanaugh*, 306 F.3d at 732 ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job."); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("[O]nce the presumption is triggered, the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job.") (emphasis in original).

4856-6695-9091.v2

79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
tmichaud@vmtlaw.com

Local Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
JUAN CARLOS SANCHEZ
KENNETH P. DOLITSKY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
jsanchez@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead
Plaintiff

- 8 -

4856-6695-9091.v2