UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ALBERT GUZMAN, Individually and on Behalf of All Others Similarly Situated, <br><br>        Plaintiff, <br><br>   vs. <br><br> FORD MOTOR COMPANY, et al., <br><br>        Defendants, | Civ No. 2:24-cv-12080-LVP-KGA <br> (Consolidated with Civ. No. 2:24-cv-12492) <br> Honorable Linda V. Parker |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL <u>SECURITIES LAWS</u>**

i

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................1

II. ARGUMENT .......................................................................................................2

    A. Plaintiffs Do Not Allege An Actionable Misstatement .............................2

        1. Challenges to the Warranty Statements Should Be Dismissed........2

            a. Ford Did Not Disclose "Declining" and "Improved" Reserves ................................................................................2

            b. Plaintiffs Allege No Facts Showing That Defendants "Manipulat[ed]" Warranty Reserves .....................................4

            c. The Warranty Statements Are Nonactionable Opinions .......5

            d. The Safe Harbor Protects the Forward-Looking Statements ...............................................................................7

        2. Challenges to the Quality Statements Should Be Dismissed...........8

        3. Challenges to the Risk Disclosures Should Be Dismissed ............10

    B. Plaintiffs Do Not Allege a Strong Inference of Scienter..........................10

        1. The *Helwig* Factors Do Not Support Scienter .............................10

        2. Plaintiffs' Remaining Arguments Do Not Support Scienter .........14

        3. Plaintiffs Do Not Allege Ford's Scienter....................................15

III. CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Bond v. Clover Health Invs., Corp.*,
587 F. Supp. 3d 641 (M.D. Tenn. 2022) ...............................................................4

*Chang v. Accelerate Diagnostics, Inc.*,
2016 WL 3640023 (D. Ariz. Jan. 28, 2016) .........................................................4

*City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*,
29 F.4th 802 (6th Cir. 2022) ...............................................................................11

*Doe v. Bredesen*,
507 F.3d 998 (6th Cir. 2007) .............................................................................7, 8

*Doshi v. Gen. Cable Corp.*,
823 F.3d 1032 (6th Cir. 2016) ..............................................................................6

*Grae v. Corr. Corp. of Am.*,
2017 WL 6442145 (M.D. Tenn. Dec. 18, 2017) .................................................13

*In re Ford Motor Co. Sec. Litig.*,
381 F.3d 563 (6th Cir. 2004) .................................................................................8

*In re Huntington Bancshares Inc. Sec. Litig.*,
674 F. Supp. 2d 951 (S.D. Ohio 2009) ...........................................................6, 12

*In re Omnicare, Inc. Sec. Litig.*,
2013 WL 1248243 (E.D. Ky. Mar. 27, 2013), *aff'd*, 769 F.3d 455
(6th Cir. 2014).......................................................................................................9

*In re Sotera Health Co. Sec. Litig.*,
2025 WL 1648942 (N.D. Ohio Mar. 19, 2025), *aff'd*, 2026 WL
508962 (6th Cir. Feb. 24, 2026) .........................................................................10

*In re The Goodyear Tire & Rubber Co. Sec. Litig.*,
436 F. Supp. 2d 873 (N.D. Ohio 2006) ........................................................ 11, 13

*In re Walmart Inc. Sec. Litig.*,
151 F.4th 103 (3d Cir. 2025) .................................................................................6

*In re Washington Prime Grp., Inc. Sec. Litig.*,
2024 WL 1307103 (S.D. Ohio Mar. 27, 2024)................................................7, 8

*Laborers' Loc. #231 Pension Fund v. PharMerica Corp.*,
2019 WL 4645583 (W.D. Ky. Sept. 24, 2019)....................................................6

*Lim v. Hightower*,
2025 WL 2965692 (6th Cir. Oct. 21, 2025) ........................................................2

*Lu v. Align Tech., Inc.*,
417 F. Supp. 3d 1266 (N.D. Cal. 2019)..............................................................4

*Malin v. XL Cap. Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d
Cir. 2009) ...........................................................................................................7

*Newtyn Partners, LP v. All. Data Sys. Corp.*,
165 F.4th 947 (6th Cir. 2026) .................................................................. passim

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015)............................................................................................5

*Pittman v. Unum Grp.*,
861 F. App'x 51 (6th Cir. 2021) .......................................................................14

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) ...........................................................................14

*Shupe v. Rocket Cos.*,
660 F. Supp. 3d 647 (E.D. Mich. 2023) ...........................................................12

*Stary v. Teladoc Health, Inc.*,
2026 WL 878939 (S.D.N.Y. Mar. 31, 2026)......................................................1

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
83 F.4th 514 (6th Cir. 2023) ............................................................................12

*Woolgar v. Kingstone Cos.*,
477 F. Supp. 3d 193 (S.D.N.Y. 2020) ................................................................5

iv

## STATUTES

15 U.S.C. § 78u-5(i)(1) ........................................................................................9

## I.   INTRODUCTION

To meet their heightened burden to plead a securities fraud claim, Plaintiffs admit that context matters.  Even in Plaintiffs' recently submitted "supplemental authority," the district court dismissed certain claims under the PSLRA because the "broader context" revealed that the plaintiffs "inaccurately" portrayed the statement in their complaint.  *Stary v. Teladoc Health, Inc.*, 2026 WL 878939, at *9 (S.D.N.Y. Mar. 31, 2026) (Dkt. 57).  Plaintiffs here use the same strategy, and their Opposition confirms it.  In Plaintiffs' telling, Ford "repeatedly assured investors that warranty costs were declining" and "reported inflated profits by recording much lower warranty reserve increases than in years prior."  Dkt. 54 ("Opp.") at 1-2.  Plaintiffs can only make these assertions by omitting what Defendants actually said and then ripping their statements out of context.

For example, Plaintiffs claim CEO James Farley "assured investors" that warranty costs were declining in July 2022 because Ford "takes actions quickly to resolve" defects by using over-the-air updates.  Opp. at 2, 8, 12, 29 n.15.  Plaintiffs omit, however, that Ford's warranty accruals *increased* in July 2022—by 69% year-over-year and 1,681% quarter-over-quarter.  Dkt. 53 ("Mot.") at 17.  Plaintiffs similarly omit what Farley said before and after the statement they quote: "we continue to be hampered by recalls and customer satisfaction actions" and "[w]e have more work to do in this space."  Ex. 9 at 5.  Plaintiffs do this over and over—

1

clipping and mischaracterizing Defendants' statements and the accruals themselves. Rather than face their pleading failures, Plaintiffs implore the Court *not* to consider the actual accruals or full content of the statements.  Opp. at 3.  The Sixth Circuit rejected this same plea last year, concluding that "at the motion-to-dismiss stage, we can consider documents that contradict the complaint to ensure that cases 'doomed [for] failure' do not proceed."  *Lim v. Hightower*, 2025 WL 2965692, at *12 (6th Cir. Oct. 21, 2025).  In fact, doing so "is essential in securities-fraud cases given the heightened pleading standards."  *Id.* at *4.

This case is "doomed for failure."  Plaintiffs allege no facts showing Defendants lied about quality issues or accruals for future warranty costs, which, in any event, constitute non-actionable opinions and forward-looking statements protected by the PSLRA safe harbor.  The same is true for scienter.  No particularized facts support a strong inference that Farley and CFO John Lawler knew the warranty accruals were wrong.  Plaintiffs' counterarguments have been repeatedly rejected as insufficient to meet the heavy pleading burden.  The AC should be dismissed.

## II.  ARGUMENT

### A.  Plaintiffs Do Not Allege An Actionable Misstatement

#### 1.  Challenges to the Warranty Statements Should Be Dismissed

##### a.  Ford Did Not Disclose "Declining" and "Improved" Reserves

Plaintiffs' Opposition confirms their case rests on a false premise.  They assert that "Defendants repeatedly assured investors that warranty costs were declining"

2

and "reported drastically improved (and suppressed) warranty reserves." Opp. at 1, 11. But Defendants did no such thing—and the few purported "facts" supporting Plaintiffs' argument all omit crucial context refuting their claims.

Plaintiffs present a chart purportedly showing a "positive reversal of prior trends" in reserves from 2017 to 2024. *Id*. at 11. The problem, however, is that the Class Period began in October *2021*, so the first 4.75 years in the chart are irrelevant to Plaintiffs' claims. With those years removed, the data shows not "declining" and "drastically improved" accruals but consistently *growing* reserves. Indeed, accruals increased year-over-year in *nine of the twelve quarters* in the Class Period. Mot. at 17-18. The full "context" thus shows a negative, not positive, trend. *Newtyn Partners, LP v. All. Data Sys. Corp.*, 165 F.4th 947, 962 (6th Cir. 2026) ("reading the statement 'in context,' as we must, makes this an even easier call" for dismissal).

Compounding the problems, Plaintiffs quote Lawler's comment that "we're improving our quality . . . . We saw that come through this year, from a year-over-year warranty standpoint was roughly down $1.4 billion." Opp. at 1, 8, 12, 29 n.15. Plaintiffs never mention, however, that Lawler said this in February 2022—early in the Class Period—and omit what Defendants said in later quarters. For example, in April 2022, Farley noted that "we continue to be hampered by recalls and customer satisfaction actions. This has to change." Ex. 7 at 4. On the same call, Lawler commented that "pricing improvements were more than offset" by "higher warranty

expense[s]." *Id.* at 5-6.  Another executive added, "we were targeting $1 billion to $2 billion of warranty opportunity by mid-decade.  In '21, we delivered $1.4 billion of that" but "[w]hen you look at Q1 of this year, we had a deterioration." *Id.* at 13. To meet their heightened PSLRA pleading burden, Plaintiffs "must account for the entirety" of the challenged statements, "not simply invoke selective quoting." *Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1276 (N.D. Cal. 2019).  Instead, Plaintiffs urge the Court not to consider the full context of Defendants' statements, suggesting it raises a "truth-on-the-market" defense.  Opp. at 14.  But reading a statement "in context"—including the accruals themselves—is "*not* a truth-on-the-market defense." *Chang v. Accelerate Diagnostics, Inc.*, 2016 WL 3640023, at *5 (D. Ariz. Jan. 28, 2016); *see also Newtyn*, 165 F.4th at 962 (courts "must" consider context).

### b.     Plaintiffs Allege No Facts Showing That Defendants "Manipulat[ed]" Warranty Reserves

Plaintiffs assert that Defendants engaged in a "scheme" to manipulate warranty reserves (and thus violate ASC 450) "by excluding the costs of recalling and fixing then-existing costly defects."  Opp. at 25.  Plaintiffs allege zero facts supporting this theory, including, for example, *who* manipulated the model that set the reserves each quarter, *how* they overrode the model to reduce the reserves, *when* they did so, or *by how much* reserves were understated.  Plaintiffs shrug off this failure by arguing these details "can await fact and expert discovery."  Opp. at 16. Plaintiffs' own cited authority refutes their argument.  In *Bond v. Clover Health*

*Investments, Corp.*, the court (quoting the Sixth Circuit) concluded that when pleading a fraudulent scheme, the plaintiff must "'provide examples of specific' fraudulent conduct that are 'representative samples' of the scheme." 587 F. Supp. 3d 641, 664 (M.D. Tenn. 2022) (Opp. at *passim*). Plaintiffs offer no such facts here. Their claims should be dismissed. *See Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 226 (S.D.N.Y. 2020) (dismissing without facts showing "*why* and *how*" reserves were "inaccurate when made").

### c.    The Warranty Statements Are Nonactionable Opinions

Plaintiffs contend that warranty reserves cannot be opinions because they "contained the false factual assertion" reporting "positive trends." Opp. at 25. As noted, the reserves do not reflect these positive trends. So, Plaintiffs pivot, arguing instead that the "reserve statements" constitute actionable opinions because (1) "Defendants did not believe the opinion"; and (2) the opinions "omitted material facts" that "conflict with what a reasonable investor would take from the statement itself." Opp. at 26 (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 188-89 (2015)). Both arguments fail.

As to the first prong, Plaintiffs' only support for their assertion that "Defendants *did* not believe" the reserves is that "Defendants *could* not believe" those reserves. *Id.* That, of course, is a conclusion, not a fact, and Plaintiffs' hindsight disagreement with Ford's accounting judgment is not enough to make an

5

opinion actionable. *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1044 (6th Cir. 2016) (hindsight allegations do not show contemporaneous knowledge of improprieties). Indeed, Plaintiffs do not allege that Defendants received "reports, data, or signs" showing Ford's warranty costs would be higher than the amounts it accrued. *In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 965 (S.D. Ohio 2009).

Plaintiffs' ASC 450 challenge fares even worse. In the AC, Plaintiffs faulted Ford for failing to disclose "the possible loss or range of loss" in addition to the amounts accrued. AC ¶ 129. When Defendants pointed out that Ford did exactly that, Plaintiffs now say Ford should have accrued the potential losses rather than disclose them. Opp. at 20-21. Of course, Plaintiffs did not plead this, and regardless, they allege no facts that Defendants "subjectively thought" Ford needed to accrue more than it did. *In re Walmart Inc. Sec. Litig.*, 151 F.4th 103, 120 (3d Cir. 2025).

As to the other prong, Plaintiffs say Defendants "omitted" that they "delayed recalls to suppress" warranty reserves. Opp. at 27. In support, Plaintiffs point to the post-Class Period NHTSA consent order about the rear camera recall. *Id.* But those recalls occurred *before* Ford increased warranty reserves in July 2024. In fact, the first recall occurred in September 2020, over a year before the Class Period. AC ¶ 176. Even so, to be actionable, Plaintiffs must show Defendants omitted "how [they] formed the opinion[s] and the real facts are otherwise." *Laborers' Loc. #231 Pension Fund v. PharMerica Corp.*, 2019 WL 4645583, at *10 (W.D. Ky. Sept. 24,

6

2019) (quoting *Omnicare*, 575 U.S. at 188).  Plaintiffs do the opposite:  they admit that Ford described *exactly* how it developed the accruals each quarter and warned of "uncertainty and potential volatility of the factors used in establishing" those estimates.  AC ¶¶ 34, 36-37.  Ford's independent auditor then evaluated Ford's model and accruals and issued clean opinions every year in the Class Period.  Ex. 2 at 83, 105; *see also Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 148 (D. Conn. 2007) (dismissing without allegations of "restatement" or auditor withdrew its opinion), *aff'd*, 312 F. App'x 400 (2d Cir. 2009).

### d. The Safe Harbor Protects the Forward-Looking Statements

Plaintiffs do not address and thus concede that (1) "meaningful cautionary language" accompanied Defendants' statements about future warranty costs; and (2) Defendants made those statements without "actual knowledge" of falsity.  15 U.S.C. § 78u-5(i)(1); *Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007).  The PSLRA safe harbor thus immunizes the statements (in two ways) unless Plaintiffs can show the statements were not "forward-looking."  To this end, Plaintiffs argue that Ford's warranty accruals are not forward-looking because they are based, in part, on "historical cost experience."  Opp. at 24.  But by definition, accruals estimate amounts Ford will pay *in the future.*  And any "company wanting to make a reliable projection of financial items"—such as "expected costs"—"likely would follow a formula based in part on past or current performance."  *In re Washington Prime*

*Grp., Inc. Sec. Litig.*, 2024 WL 1307103, at \*19 (S.D. Ohio Mar. 27, 2024).  Doing

so "does not remove [its] estimates from safe harbor protection."  *Id*.

### 2.   Challenges to the Quality Statements Should Be Dismissed

Plaintiffs fail to address two of the nine quality statements Defendants

identified in the Motion (AC ¶¶ 90, 92(b)) and thus forfeit any challenge to them.

*Bredesen*, 507 F.3d at 1007.  The remaining seven (AC ¶¶ 82(b), 87, 95, 99, 102,

104, 115) should be dismissed because Plaintiffs fail to allege falsity with

particularity, the statements constitute nonactionable corporate optimism, or both.

**No Particularized Falsity**.  Plaintiffs argue that Defendants "misleadingly

attributed certain warranty cost increases to temporary 'inflation' rather than the

quality defects they needed to fix."  Opp. at 21.  For instance, Plaintiffs claim Lawler

lied by saying "inflationary pressures" impacted "2Q 2023" warranty costs because

he later said recalls and warranty drove $900 million in "3Q 2023" costs.  *Id.*  But

Lawler was talking about two different quarters at two different times.  He could not

have disclosed costs Ford had not yet incurred.  *See In re Ford Motor Co. Sec. Litig.*,

381 F.3d 563, 572 (6th Cir. 2004).

Likewise, according to Plaintiffs, Ford stated that the 3Q23 "warranty

problems would be non-recurring" and only cited inflation "as a source of increased

warranty costs in 2024."  Opp. at 21-22.  Plaintiffs are wrong on both.  Ford never

suggested increased warranty costs in 3Q23 were a one-off.  Just the opposite, when

announcing those costs, Farley first lamented that "cost and quality remain a drag on our business." Ex. 22 at 3. He then cautioned that Ford still needed to "get after the part of [the] iceberg that's below the water. That's been a problem at Ford for decades." *Id*. at 12. A few months later, Lawler warned that "there's a lag" between quality improvements and warranty-cost declines. Ex. 13 at 16. That same day, Ford advised that the time "to improve the quality of our products" (not just "inflationary cost pressures," Opp. at 22), "could continue to have an adverse effect on our financial condition." Ex. 2 at 18. In context, Defendants never said inflation was the sole reason for increased warranty costs. *See Newtyn*, 165 F.4th at 962.

**Inactionable Optimism**. Plaintiffs offer three reasons why the statements of corporate optimism (AC ¶¶ 82(b), 87, 99, 102) should not be dismissed—all meritless. Opp. at 28-29. *First*, citing *Helwig*, Plaintiffs argue that courts should not decide whether a statement is non-actionable "on a motion to dismiss." *Id*. at 30. But *Helwig* did exactly that. *See* 251 F.3d at 555. So have other courts, for decades. *E.g.*, *Ford*, 381 F.3d at 570-71. *Second*, citing two out-of-circuit decisions, Plaintiffs insist that statements made in "response to analyst questions" cannot be immaterial. Opp. at 29. *Omnicare* rejected this same argument, holding corporate optimism does not become actionable "when made in response to an analyst's questions." *In re Omnicare, Inc. Sec. Litig.*, 2013 WL 1248243, at *16 (E.D. Ky. Mar. 27, 2013), *aff'd*, 769 F.3d 455 (6th Cir. 2014). *Finally*, Plaintiffs assume the

9

statements must have been material because Ford's stock "plummeted shortly after disclosure."  Opp. at 30.  But Defendants made the statements up to twenty months before or four months after the alleged stock drops, and even then, Plaintiffs do not connect those drops with the statements at issue.  AC ¶¶ 82(b), 99, 133.

### 3. Challenges to the Risk Disclosures Should Be Dismissed

Plaintiffs challenge Ford's risk factors that vehicles "could be affected by defects" that result in "recall campaigns, or increased warranty costs" and such costs could "have an adverse effect" on Ford's business.  Opp. at 22.  According to Plaintiffs, Ford presented these risks as "purely hypothetical" when they "had already transpired" and failed to warn that it was delaying recalls to "suppress reserves and inflate profits."  *Id.* at 22-23.  This fails for two reasons.  *First,* the Sixth Circuit has repeatedly rejected claims that companies must disclose that risks "*are* affecting financial results rather than *may* affect financial results."  *Kolominsky v. Root, Inc.*, 100 F.4th 675, 689 (6th Cir. 2024); *Newtyn*, 165 F.4th at 964.  *Second*, Plaintiffs allege no facts showing Ford "suppressed reserves" or "inflate[d] profits," and Ford is "not required" to disclose "unproven allegations."  *In re Sotera Health Co. Sec. Litig.*, 2025 WL 1648942, at *28 (N.D. Ohio Mar. 19, 2025), *aff'd*, 2026 WL 508962 (6th Cir. Feb. 24, 2026).

### B. Plaintiffs Do Not Allege a Strong Inference of Scienter

### 1. The *Helwig* Factors Do Not Support Scienter

Pleading a "strong inference" of scienter is a "tall order," and the Opposition

confirms Plaintiffs come nowhere close.  *Newtyn*, 165 F.4th at 965.  Conceding they allege few of the factors courts use to assess scienter, Plaintiffs insist they can plead scienter "without the[m]."  Opp. at 30-31.  True, "the *Helwig* factors are non-exhaustive," but failure to plead them "indicates the absence of scienter."  *In re The Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d 873, 900 (N.D. Ohio 2006).

**Stock Sales Do Not Support Scienter (Factor 1)**.  Plaintiffs claim Farley's and Lawler's stock sales were "suspicious" (Opp. 38) but their own cited authority shows the opposite.  In *City of Taylor General Employees' Retirement System v. Astec Industries, Inc.*, the court found defendant's sales suspicious when he sold millions of dollars of stock—"more than 3.5 times [his] annual compensation"—"less than a week" before the company revealed the alleged fraud.  29 F.4th 802, 814 (6th Cir. 2022) (Opp. at 38-39).  By contrast, Plaintiffs admit Farley and Lawler sold stock between *seven and twenty-nine months* before the alleged corrective disclosures and allege no facts suggesting the proceeds dwarfed their compensation.  Opp. at 38.  More importantly, Plaintiffs concede that Farley and Lawler *increased* their stockholdings by 142% and 245%, respectively, during the Class Period.  Mot. at 34-35.  "These decisions would make little sense if defendants believed [Ford's] stock was destined to crater."  *Newtyn*, 165 F.4th at 969.

**No Divergence Between "Reports" and Statements (Factor 2)**.  Plaintiffs assert that Defendants "closely monitored warranty cost and quality issues" during

11

"cost meetings" and in "discussions with Ford's head of Quality."  Opp. at 32. "Completely absent," however, "is any detail about exactly what was discussed, whether or not the extent of the problem [was] discussed, whether the possible impact on [Ford's] financial results was raised, or specifically when the alleged discussions occurred."  *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 83 F.4th 514, 531 (6th Cir. 2023).  Without this information, "mere attendance at meetings" discussing quality "does little to establish the kind of 'red flags' necessary to support a strong inference of scienter."  *Id.*  The same is true for Defendants' alleged "monitoring" of "message boards and social media to identify quality and warranty issues."  Opp. at 32.  Plaintiffs allege no facts suggesting Farley or Lawler "monitor[ed]" these sites, let alone understood after reading them that Ford's warranty accruals were too low.  *See Huntington*, 674 F. Supp. 2d at 971 ("general assertions" that defendants "monitor[ed] cash flow[s]" insufficient).

Plaintiffs similarly speculate that Defendants "knew of the warranty issues" because they concerned "2016-2020-launched models."  Opp. at 34.  But defects can arise at any time, for any model year.  Lawler explained just that during an earnings call, noting "it is hard to predict on some of these units that have been out in the field for quite a while that one of these issues is going to show up," which is why he cautioned "we need to work through that."  Ex. 15 at 17.  Plaintiffs' cited cases only highlight their pleading deficiencies.  In *Shupe v. Rocket Cos.*, defendants admitted

to "daily" monitoring of the very performance metrics they allegedly misrepresented. 660 F. Supp. 3d 647, 678-79 (E.D. Mich. 2023) (Opp. at 31). A confidential witness then "corroborate[d]" that executives discussed the metrics "three to four times per week in meetings." *Id.* Likewise, in *Grae v. Corrections Corp.*, a former employee reported that defendants privately knew the government sent a "mountain" of criticisms while they publicly touted the company's relationship with the government. 2017 WL 6442145, at *6-7, 21 (M.D. Tenn. Dec. 18, 2017) (Opp. at 32). By contrast, Plaintiffs allege no facts suggesting that Farley or Lawler played any role in the warranty-accrual process, let alone learned information that contradicted those accruals.

**No "Close In Time" Disclosures (Factor 3)**. Plaintiffs argue that the "closeness in time" between Ford's July 2024 disclosure of higher warranty costs and its "prior reassurances" supports scienter. Opp. at 37-38. But Defendants never "reassured" that costs would be lower; Defendants continuously disclosed elevated costs. *See* Mot. at 17-18. In any event, Ford's disclosure came three months after the last accrual (AC ¶ 101), which is "too distant" to support scienter. *Goodyear Tire*, 436 F. Supp. 2d at 901.

**No Motive (Factor 9)**. Plaintiffs insist Farley and Lawler were "motivat[ed]" to lie to pursue their business strategy and "avoid the fate of their predecessors." Opp. at 38. But "[a]ll corporate managers" want "their companies to appear

13

successful" and to "protect [their] position within a company." *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 690 (6th Cir. 2004).  That Farley and Lawler sought to "boost Ford's financial performance and stock price" (AC ¶ 28) would benefit all Ford stockholders and thus "does not comprise a motive for fraud." *Id.* at 690.

### 2.    Plaintiffs' Remaining Arguments Do Not Support Scienter

**Consent Order Does Not Support Scienter**.  Plaintiffs say the post-Class Period NHTSA consent order about the pre-Class Period rear-camera recall supports that Farley and Lawler knew Ford was misstating its warranty reserves during the Class Period.  Opp. at 33.  Plaintiffs concede, however, that the consent order discusses neither warranty reserves nor Farley or Lawler.  *Id.* at 33 n.18.  And besides, the "existence of a pending government investigation" is insufficient "to give rise to a strong inference of scienter." *ServiceMaster*, 83 F.4th at 521, 530. That is particularly true here, where "nothing" in the AC "explains how (if at all) the company assessed" the investigation's effect on accruals.  *Id*.

**Core Operations Does Not Support Scienter**.  Plaintiffs "presume" that Defendants knew Ford understated its accruals because they were "laser focused" on reducing "warranty costs," which was "critical" to "Ford's results."  Opp. at 31, 35.  But the "fact that executives are intimately familiar with a core component of their business does little to suggest fraudulent intent." *Pittman v. Unum Grp.*, 861 F. App'x 51, 55 (6th Cir. 2021).

14

**The Magnitude of Reserve Increase Does Not Support Scienter**.  Plaintiffs argue that the "60% [year-over-year] increase to reserves" in 2Q24 supports scienter. Opp. at 37.  But Ford reported year-over-year warranty-accrual increases in nine of twelve Class Period quarters.  Mot. at 17-18.  In fact, the increase in July 2024 was the *smallest* percentage increase of those nine quarters.  *Id*.  It is thus not the "in your face," "extreme" circumstance that Plaintiffs portray.  Opp. at 37.

### 3.     Plaintiffs Do Not Allege Ford's Scienter

Because Plaintiffs allege no particularized facts supporting a strong inference of Farley's and Lawler's scienter, Plaintiffs fail to allege Ford's scienter, too.  *See ServiceMaster*, 83 F.4th at 532.  Confirming this failure, Plaintiffs speculate that Ford's scienter "may be imputed" to unnamed employees who allegedly "supplied" information about "defects and warranty costs."  Opp. at 40 n.23.  Plaintiffs never alleged this in their AC, and for good reason:  they neither identify these "employees" nor facts showing these employees played any "role in formulating the disclosures at issue in this case."  *ServiceMaster*, 83 F.4th at 532.

### III.   CONCLUSION

The AC should be dismissed with prejudice.

Dated: May 7, 2026

| By: */s/ Stephanie A. Douglas (w/ consent)* | By: */s/ Andrew B. Clubok* |
|---|---|
| **BUSH SEYFERTH PLLC** | **LATHAM & WATKINS LLP** |
| Stephanie A. Douglas (P70272) | Andrew B. Clubok |
| Roger P. Meyers (P73255) | Susan E. Engel |

<table>
<tr><td>

100 West Big Beaver Road, Suite 400
Troy, MI 48084
Telephone: (248) 822-7800
Email: meyers@bsplaw.com
      douglas@bsplaw.com

</td><td>

555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: andrew.clubok@lw.com
      susan.engel@lw.com

Michele D. Johnson
650 Town Center Dr., 20th Fl.
Costa Mesa, CA 92626
Telephone: (714) 540-1235
Email: michele.johnson@lw.com

Nicholas J. Siciliano
330 N. Wabash Ave., Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: nicholas.siciliano@lw.com

Jordan Mundell*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
Email: jordan.mundell@lw.com

*Admission forthcoming

</td></tr>
</table>

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 7, 2026, the foregoing Defendants' Reply in Support of Their Motion to Dismiss Consolidated Complaint for Violations of The Federal Securities Laws was filed through the Court's CM/ECF system.

By: */s/ Andrew B. Clubok*
Andrew B. Clubok

17